IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CAROLYN MILLER                    :

                                  :

v.                                :   Civil Action WMN-00-3233

                                  :

NEW BALTIMORE CITY BOARD
    OF SCHOOL COMMISSIONERS       :

**MEMORANDUM**

Before the Court is Defendant's Motion for Summary Judgment. Paper No. 24. The motion is fully briefed and ripe for decision. Upon review of the motion and the applicable case law, the Court determines that no hearing is necessary and that the motion shall be granted in part and denied in part.

In her Complaint, Plaintiff Carolyn Miller, an African American, alleges that she was discriminated against on the basis of her race, and retaliated against for complaining about that discrimination. Miller has been employed in the Baltimore City school system since 1972. She began as a teacher and in 1992 was promoted to the position of Department Head. One year later, she was promoted to the position of Assistant Principal, and two years after that, to the position of Principal at Arnett Brown Middle School. At the time that Miller was assigned to Arnett Brown, the school was identified as a "Reconstitution Eligible School," a designation which indicated that the school's performance was so deficient that the State of Maryland was prepared to take over the operations of the school if those

performance standards did not improve.

Miller was selected for the principal position at Arnett Brown by Gary Thrift. Thrift serves as the Area Executive Officer (AEO), and is responsible for overseeing the schools in the particular geographical area that includes Arnett Brown. In that role, Thrift is the direct supervisor, and is responsible for the evaluation of, all principals in his area. In the Baltimore City school system, each principal is formally evaluated in 20 categories, receiving either a "satisfactory" or "unsatisfactory" rating for each. In addition, Thrift employs a system whereby he places an asterisk next to categories where the principal's performance, while satisfactory, raises some concern.

For the first two years of Miller's term as principal of Arnett Brown, Thrift gave her only satisfactory ratings, with no asterisks. In fact, Thrift gave Miller unqualified praise. At the conclusion of the 1996/1997 school year, Thrift wrote of Miller's performance:

> where there was confusion, there is order; where there was no evidence of planning, there is thorough documentation, where there was minimal on-site supervision; there is daily and weekly oversight of every aspect of schooling. Dr. Miller is to be commended for pushing her team to reach beyond their immediate grasp, and for instilling a sense of pride and can-do spirit among the students.

Miller 1997 Evaluation Form, Pl. Exh. 6.

During the 1996/1997 school year, however, an incident occurred that, in Miller's view, led to a dramatic change in Thrift's attitude toward her and her performance. In response to what she viewed as clear violations of school policy, Miller reprimanded a white, female, school speech pathologist, Sandy Siffrin. Siffrin complained about the reprimand to Thrift, and Thrift, in turn, reprimanded Miller for reprimanding Siffrin. At the end of the school year, Miller rated Siffrin's performance unsatisfactory in one category and, consistent with school policy, placed her on a performance improvement plan. Thrift again became involved and sought to compel Miller to change Siffrin's evaluation, but Miller refused.

Miller saw the intervention of Thrift, who is white, on the side of Siffrin as unfair and racially discriminatory. In August of 1997, prior to the start of the new school year, Miller requested through her union representative a meeting with Thrift to address her concerns that she was being unfairly treated because of the Siffrin incident. Although Thrift asserts that he does not remember this particular aspect of the conversation, Plaintiff states that she made clear at that meeting that she believed that Thrift was treating her unfairly because she was a "strong black female." Miller Aff. at ¶4.

During the 1997/1998 school year, Thrift issued over 50 memoranda criticizing Miller's performance. In Miller's mid-year

3

review, which Thrift completed in February 1998, Thrift rated her performance unsatisfactory in 11 of 20 categories. A rating of unsatisfactory in four or more categories automatically results in an overall rating of unsatisfactory. This was the first time in Plaintiff's 20-year history in the Baltimore City school system that she had ever received an unsatisfactory rating in any category. In Miller's year-end evaluation, Thrift rated her unsatisfactory in 6 of the 20 categories and placed asterisks next to another 4. Thus, she again received an overall unsatisfactory rating.

As a result of her unsatisfactory rating, Miller was demoted from principal to assistant principal. While Defendant attempts to distance Thrift from that decision, Thrift acknowledges that anytime that he has given a principal an unsatisfactory rating, that individual was demoted to a lesser position. Thus, while the official decision-maker in Miller's reassignment was Robert Schiller, the school system's Chief Executive Officer, in practical terms, it was a decision primarily within the control of Thrift.

After exhausting administrative remedies, Miller filed the instant action. She initially brought claims of racial discrimination and retaliation.[1] In her response to Defendant's

---

[1] The Complaint has two counts that assert claims of discrimination: Count I, which is brought pursuant to Title VII of

motion for summary judgment, however, Miller indicated that this case is "primarily a case of retaliation," and she is not opposing the entry of judgment on the discrimination claims. Opp. at 1 n.1. The Court notes that Defendant, in its memorandum in support of its summary judgment motion, focused almost exclusively on the discrimination claim, relegating its discussion of the retaliation claim to about one half of one page. Even after Miller disclosed in her opposition the focus of her claim, Defendant offered only slightly more in its Reply.

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in protected activity; (2) her employer took adverse employment action against her; and (3) a sufficient causal connection existed between her protected activity and her employer's adverse employment action. Hopkins v. Baltimore Gas and Elec. Co. 77 F.3d 745, 754 (4th Cir. 1996). Viewing the facts in the light most favorable to Miller, as the Court must at this stage in the litigation, there is no question that she has made out a prima facie case. Her complaints to Thrift about what she believed to be discriminatory conduct on his part constituted protected activity. See Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). Her demotion from the position of principal to that of assistance principal was an adverse employment

---

the Civil Rights Act of 1964, and Count III, which is brought pursuant to 42 U.S.C. § 1981. Count II is a claim of retaliation in violation of Title VII.

action. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998)(defining "tangible employment action" as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."); Reinhold v. Com. of Va. 151 F.3d 172, 173 (4th Cir. 1998). A jury could infer that there was a causal connection between the two, given the abrupt and dramatic change in Thrift's evaluation and treatment of Miller immediately after she complained to him. See Williams v. Ceberonics, Inc., 877 F.2d 452, 456 (4th Cir. 1989).

As noted above, Defendant's arguments relevant to Miller's retaliation claim are limited. Defendant's first argument is based upon a mis-characterization of Miller's claim. In November 1997, Miller had a meeting with Allan Harris, the Director of Administration and Labor Relations of the School System, to raise her concerns about Thrift's treatment of her. By focusing on this meeting as the "protected activity," Defendant seeks to undercut the causal connection between the protected activity and the adverse employment action by noting that some of Thrift's disparaging memoranda were sent before that November meeting. Miller contends, however, that it was her meeting with Thrift in August of 1997 that precipitated the change in Thrift's behavior.

Defendant's only remaining argument is based on the fact that it was Schiller, not Thrift, who made the ultimate decision

6

to reassign Miller. Because Schiller was unaware of Miller's complaints about Thrift's discrimination at the time that he approved that reassignment, Defendant argues that there can be no inference of discrimination. See Reply at 3. This argument, however, ignores Thrift's own admission that Schiller's decision was based entirely upon Thrift's evaluation, which a jury could conclude was retaliatorily motivated.

For these reasons, the Court will deny Defendant's motion as to Miller's retaliation claim. The Court will grant Defendant's motion as to the discrimination claims. A separate order consistent with this memorandum will issue.

                                                  William M. Nickerson
                                                  United States District Judge

Dated: June 3, 2002